The next case for argument is Blackmon v. Jones. Ms. Tisher. Good morning, your honors. May it please the court. The officers are entitled to qualified immunity on Mr. Blackmon's unduly suggestive identification claim. This morning I will begin by clarifying what is and what is not before this court. I will then explain that Mr. Blackmon's claim is not cognizable and that, at a minimum, the officers did not violate any clearly established law. The sole claim on which the officers seek qualified immunity is Mr. Blackmon's claim that the officers violated his due process rights by engaging in unduly suggestive identification procedures that affected his criminal trial. We do not assert qualified immunity from any theory of liability based on fraud or concealment of evidence by police officers, and Mr. Blackmon has taken the position that officers are liable for unduly suggestive identification procedures even in the absence of such fraud or concealment. The jury should not be allowed to hold the officers liable based solely on that alleged conduct. Mr. Blackmon ignores the limited nature of our request and identifies purported disputes of fact that are relevant to this appeal. Those disputes bear on other claims not before this court, namely that the officers fabricated Ms. Reese's identifications and withheld this fabrication from prosecutors. None of that is at issue in this appeal. Turning to the merits, the officers accept for purposes of appeal Mr. Blackmon's version of the facts, and on these facts the officers are entitled to qualified immunity. On the cognizability issue, the Constitution does not mandate that photo arrays and lineups meet a certain standard of quality, and because Section 1983 requires a constitutional violation, a 1983 claim cannot be based solely on an unduly suggestive identification. The District Court's application of the two-step framework derived from Biggers and Brathwaite was legal error. That is a prophylactic rule governing the admissibility of identification evidence at a criminal trial and not a source of damages against police officers. Would we have to overrule Holloway or some of our other cases to find in your favor? Where we have applied that procedure? Your Honor, I do not believe that this court would necessarily need to overrule its prior precedents. Those cases, Holloway, Alexander, which Mr. Blackmon relies on, didn't squarely address the issue of whether and under what circumstances a police officer could be held liable, and to the extent that those cases could be interpreted as recognizing such a claim, our position is that they would not survive the Supreme Court's recent decision in Vega, which squarely held that a violation of a prophylactic rule is not a source of Section 1983 liability. And so this court could take an opportunity to clarify those earlier precedents that a claim is not cognizable. And then it's also consistent with this court's precedent regarding what's baked into the 1983 claim is this idea of personal responsibility, that to have a Section 1983 claim, the officers have to be personally responsible for the constitutional violation. So the police officers who employ- How does Vega help you? Because the claim here is not a, at least from my understanding of it, is not a freestanding, standalone claim of suggestive identification procedures. It's the argument that those suggestive procedures tainted the trial, which is separate from what the Vega court addressed. Well, Your Honor, what the district court did here is it applied that- it basically held the officers, or explained that the officers could be liable based solely on their use of unduly suggestive procedures. Because it tainted the trial. I don't think the court said, and the plaintiffs aren't arguing, I'll clarify that with Mr. Safer, but the plaintiffs aren't arguing that just the suggestive identification procedures alone could form the basis for a 1983. So if this case hadn't gone to trial, they would not be in here arguing a 1983 violation. Their argument is something beyond that, that the mere fact of these suggestive identification procedures themselves tainted the trial when ultimately the witnesses who were subjected to those identification procedures testified at the trial. So this takes us back to the personal responsibility component. So all 1983 claims required personal responsibility. That's a separate issue from Vega. My question to you was, how does Vega help you in the taint the trial context? Sure. So Vega said that just the violation of the prophylactic rule is not a basis for 1983 liability. The only alleged misconduct here on the part of the officers is that they employed unduly suggestive identification procedures. So in that case- But the constitutional right is not just, again, I don't want to keep repeating myself, but not just the suggestive ID procedures. It's the tainting of the trial, and I don't think Vega addresses that. Sure, but what Vega says is that it's not- Maybe I'm misunderstanding, but didn't Vega say that the right remedy is the exclusion of evidence at trial? Yes, Your Honor. Rather than damages under 1983. Yes, Your Honor, that is correct. You take it that that's how you think Vega helps you? Yes, Your Honor. Vega chose what the remedy is. Yes, Your Honor, that is correct. So it's an evidentiary rule, so it involves the exclusion of that evidence at trial. It's about the admissibility. And I want to just touch on that personal responsibility aspect again because we think that's the crux of this case as well, that the only misconduct that was alleged here is that the officers engaged, for the purposes of this claim, is that the officers engaged in those unduly suggestive procedures. So they're not personally responsible for any unfairness at the trial. It's the prosecutors that make the decision to introduce evidence, to decide whether there's sufficient evidence to go to trial, and then the judge who decides on the admissibility of that evidence, and the police officers were not involved in any of that here. So that's your causation argument, personal responsibility causation. How would you distinguish the fabrication of evidence cases that we have that come out differently on causation? Sure. Well, fabrication of evidence is distinguishable here because in that case there's this deception. It involves the police officers knowingly falsifying evidence and deceiving the prosecutors, the court, the fact finder. And so the evidence is invariably false. But in this case, when we're dealing with unduly suggestive circumstances, so long as the officers are forthcoming with the prosecutors about the circumstances surrounding the identifications, then the prosecutors, they're exercising their independent judgment on determining whether that evidence is sufficient to file charges, and then the judge is exercising its discretion to decide whether the evidence is admissible. In this case as well, when we're dealing with unduly suggestive circumstances, even as the way the district court applied this under the bigger sort of Brathwaite two-step framework, the second component, the reliability component, that says that even if the officers did engage in unduly suggestive identification procedures, it doesn't mean that it's automatically inadmissible as long as the reliability outweighs any suggestiveness. So in this case, the officers are even farther removed from that act because of any unfairness that may have occurred at trial. And I do want to point out that this court need not even decide the issue of cognizability because it's very clear that the officers did not violate any clearly established law. As we explained in our brief, Mr. Blackman did not identify any case as of 2002 at the time of the alleged misconduct that recognizes a claim for based solely on unduly suggestive procedures, and he has not cited any case clearly establishing that any of the procedures the officers used here were unduly suggestive. If there are no further questions, I would like to reserve the rest of my time. Thank you. Certainly, counsel. Mr. Safer. May it please the court, Ron Safer on behalf of Mr. Blackman. Mr. Safer, you are concerned about appellate jurisdiction. Of course, that seems an appropriate place to start, so I invite you to start there. So, Your Honor, for example, causation is a fact-bound analysis. What did the prosecutor know? What did the police officers tell the prosecutor? I understand the appellant's brief and Ms. Tischer's argument. To disclaim any contention along those lines, does that solve your jurisdictional problem? The brief says that, but it doesn't do that, and she didn't do that this morning before the court, Your Honor. So had they done that, yes, that would solve there would be no factual issue, and then it would be a purely legal issue. But here they are not doing that. For example, she just said that the prosecutor knew all about the lineup and how it was constructed. That's not so. Are there allegations counter to that? There are, Your Honor. Well, the police officers, for example, lied to Ms. McDowell and said that another witness had selected the other person. But are there any allegations in the complaint that the police officers misled the prosecutors about the identification process? There are, Your Honor, that they withheld those facts from the prosecutor. That is in the complaint, and that is alleged and that is contested and continues to be contested today. And, Your Honor, simply do not have the jurisdiction to consider that argument before the  They argue the facts. They argue whether or not in their brief, whether or not this, the irreparable misleading nature of the lineup was, quote, more subtle than in this case. Well, and in other authorities. Well, that is a fact-bound analysis, and that is not for the courts to consider. Suppose the legal rule is per vega, the remedy is exclusion of evidence if the police tell the prosecutors the truth. Per several decisions in the Seventh Circuit, starting with Jones more than 20 years ago, the remedy is damages against the police if they don't tell the prosecutors the truth. And now we need to remand so that the district judge can address that question. Is that a problem for you? Well, yes, Your Honor. I do not think, vega does not say, vega certainly says that the remedy for a prophylactic, violation of a prophylactic rule. No, they say that the remedy for the violation of a trial right is the exclusion of evidence at trial. And your own brief characterizes the constitutional wrong as the admission of tainted evidence at trial. Well, that seems to bring it squarely within vega. Vega says that the violation, that the violation of the prophylactic rule is not, is not cognizable as a 1983 claim. Not that the trial right, the due process right, is not cognizable as 1983. Well, we will have to decide what vega says. Yes. So if that, and we do characterize it as a trial right. So as Judge St. Eve said, had this lineup, had identification evidence not been admitted into evidence, then there would be no claim here. That's exactly why this is a trial right. It's exactly how your own brief describes it. It is a trial right. Yes, Your Honor. It is a trial right. So is there any case that clearly establishes the proposition that police officers can be personally liable for the violation of a trial right? Yes, Your Honor. Yes, the causation, clearly the causation, the causal chain that the court described in Hensley describes that. This causal chain business is exactly the reason why vega reversed the Ninth Circuit. What the Ninth Circuit said in its vega opinion is the police, who took evidence without giving Miranda warnings, set a causal chain in motion and they are therefore liable. That's what the Supreme Court reversed. So whatever argument we're going to make here, I assume we're not going to repeat the Ninth Circuit's error in vega. Your Honor, what the police in this case created a misidentification. If the facts are accepted as true, they intentionally rigged a lineup. They made this lineup essentially a show up for a witness who had, who had viewed somebody for five seconds, 65 days before she saw the lineup. This was true in vega too. The court assumed that there was a violation of Miranda. You're asking us to assume that there was a violation of the rule against suggestive IDs. We assume that. Where does it go from there? There are two different in vega dealing with Miranda. The question is the court says, well, that testimony could be truthful testimony, even if given in violation of Miranda. Here you have an impermissible, you have a misidentification. We need to be accurate about these legal rules. The identification at trial can be truthful and correct, even if there was a suggestive identification procedure. The reason for the exclusion is that it increases the probability of error, not that it is an assurance of error. Yes, that's right. Impermissibly. In this case, it was an error. The lineup accomplished its goal. So what your honor would be saying, what your honors would be saying if this is the rule is that police cannot be who intentionally wriggle on, who intentionally select the person for the witness. I hope you're listening yourself to what you're saying. Stop saying wriggle lineup and start saying deliberately induce a confession by deliberately ignoring Miranda. That's what Vega was about, right? You've got a different constitutional violation, but the structure of the argument seems to be identical, but the, the purpose of this, your honor, the purpose of it is to taint the trial with a witness that the, that was the purpose in Vega. It is, ain't the trial with a false confession, not necessarily a false confession, your honor. Not necessarily a false identification. It just changes the probabilities. It is an identification. I give up. It is an identification that the police selected, not the witness selected. And that is different than a confession that is given in violation of Miranda, but not, but not necessarily coerced. In this case, what, what you're, the court would be saying is that it is that a, a, an officer is immune from selecting the witness for the defense for this witness to, to, uh, to identify and, and then causing that person to testify. Indeed, in this case, you have the bolstering of that testimony by saying to the witness that they are, uh, that somebody else selected the same person that increases the certainty of that person's testimony. When they testify, that has the impact that your honor judge Easterbrook wrote in Newsome is taints a trial because that it increases the confidence of the witness, which is very persuasive to juries, but not necessarily, uh, correlated to counsel here. Here. I hear you saying there's a very detailed opinion below and in the qualified immunity, I don't see any reliance on hiding evidence, no allegation of Brady violation. Are you saying that that is the case here though? We are. Yes. The complaint alleges that the police withheld evidence, not, not, it's not a Brady violation because for example, the police report of the witnesses, uh, uh, description of the person as somebody with braids, tall, skinny, it's in the police report, but the prosecutor doesn't necessarily have that in mind. The prosecutor does not know that the police talk to this witness and sit and lied to her about somebody else. What facts about the suggestiveness of this lineup were not disclosed at the first trial to the, the fact that the witness said this is a person with tall, skinny, and with braids, and that the police intentionally selected a lineup where only one person had those characteristics specifically tailored to the, to the characteristics that the witness said something that this court found was impermissible in Israel back in 1975. Can I ask one more question? Of course. Mr. Safer, what concerns me a bit here is the court applied the Brathwaite Biggers framework in determining whether or not the claim could proceed under 1983. And from a clearly established law standpoint, the, that framework deals with the admission of evidence at trial and deals with reliability in a 1983 context. That's not what the concern is. It's a tort. And we have said in Allen and Coleman, we have called this framework into question in the 1983 context, given the uncertainty in the law and the uncertainty with that framework, how can this be clearly established? Because Your Honor, it is not in the context of 1983 clearly established whether the police knew this was a tort, but rather, rather whether they knew it was a constitutional violation. And that's what this court has found in field. The, the brave, uh, the, the framework, the Biggers and Brathwaite, uh, framework that the district court applied determined whether or not this was, was unconstitutionally tainted by an impermissibly unreliable. So what is your best settled authority here that it would have been clearly established to a reasonable officer in 2002, that the conduct here was unlawful in violation of a due process at trial case. And Hensley is on point in, uh, that was in effect in 1987 and squarely says, that if you have applying the framework, that you have impermissibly suggestive lineup claim that paints that, that, that is found to have tainted the trial and that is a necessary element. Then the sixth amendment is violent. Thank you. Thank you, Mr. Schaefer. Anything further? Ms. Tisher. Thank you, your honors. I just wanted to make a couple of quick points. I want to clarify again, what is the issue in this appeal and that the officers are seeking qualified immunity solely on the basis that, um, that, uh, the undo, the, the identification procedures were unduly suggestive. We're not seeking qualified immunity on any theory of fraud or concealment. Um, so the fact that the officers may have, uh, fabricated Ms. Reese's identification that goes to other claims that are not at issue in this appeal. I would also like to clarify though, that, um, Mr. Blackman has not identified, did not allege in his complaint nor identify any evidence on summary judgment that the officers withheld any of the circumstances surrounding the identifications from the prosecution. And in fact, in the district court's decision on page 29, the court even notes that Mr. Blackman has abandoned all his theories of separate besides suppression of Reese's identification, um, fabricated identification. So the only, um, active, uh, you know, alleged fraud or concealment, um, before the district court was that Reese identification. And that simply does not fall under the realm of unduly suggestive identification procedures because there was simply based on Ms. Reese's testimony, no identification that was ever actually made. Thank you. Counsel. Thank you. The case is taken under advisement.